UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/16/2025
```

---

UNITED STATES OF AMERICA,

- against -

FRANKLIN MINAYA AND ALBERTO CASTELLANO

Defendants.

01 Crim. 619 (VM)
16 Civ. 3513 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

In 2006, Petitioners Franklin Minaya ("Minaya") and Alberto Castellano ("Castellano") (collectively, "Petitioners") were convicted of numerous counts, including six counts of attempted or completed Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). Pursuant to 18 U.S.C. § 924(c), Petitioners were also convicted of numerous counts of possessing a firearm in furtherance of the Hobbs Act robbery counts. Petitioners were sentenced to an aggregate of 120 years' imprisonment on their Hobbs Act Robbery and Section 924(c) counts, while serving life sentences on their racketeering count. In this successive petition brought pursuant to 28 U.S.C. § 2255 ("Section 2255"), Petitioners separately move to vacate their convictions on the Section 924(c) counts. (See Dkt[1]. Nos. 451, 457 (the "Petitions").)

---

[1] All docket citations in this Decision and Order refer to filings in 01 Cr. 619.

The Government opposes the Petitions on the grounds that they are impermissible successive habeas petitions and, regardless, the Court should not review the Petitions because Petitioners' life sentences are unchallenged. (Dkt. No. 469 [hereinafter "Gov't Opp."].) For the reasons below, the Petitions are **DENIED**.

## I.    BACKGROUND

Section 924(c) allows for an enhanced sentence where the defendant used a firearm in the commission of a "crime of violence." 18 U.S.C. § 924(c). The statute has two definitions of "crime of violence." The elements clause defines a "crime of violence" as a felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The residual clause defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

A. Underlying Convictions

On October 10, 2006, in a trial presided by the Honorable Judge Robert L. Carter, a jury convicted Minaya and Castellano for their involvement in a criminal organization responsible for multiple murders, robberies, and narcotics trafficking.

(See Dkt. No. 176.) Both Minaya and Castellano received life sentences for their common racketeering conviction (Count 1), concurrent 20-year sentences for their racketeering conspiracy convictions (Count 2), concurrent 20-year sentences for the six counts of attempted Hobbs Act Robbery and completed Hobbs Act Robbery (Counts 3-8), concurrent 10-year sentences for a narcotics conspiracy conviction (Count 9), and concurrent 20-year sentences for murder while engaged in drug trafficking (Count 17). (See Dkt. No. 214 [hereinafter "Minaya Sentencing Tr."], at 5:22-6:3, Dkt. No. 219 [hereinafter "Castellano Sentencing Tr."], at 5:13-19.)

With respect to the Petitioners' common convictions for violations of Section 924(c) predicated on the Hobbs Act Robbery convictions, Minaya and Castellano were each sentenced to the following:

   (a)  5 years consecutive sentence for one count of using a firearm in furtherance of attempted Hobbs Act robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 10)

   (b)  25 years consecutive sentence for two counts of brandishing a firearm in furtherance of completed Hobbs Act robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 11 and 12)

   (c)  25 years consecutive sentence for one count of discharge of a firearm in furtherance of attempted Hobbs Act Robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count 13)

   (d)  25 years consecutive sentence for one count of discharge of a firearm in furtherance of completed

> Hobbs Act Robbery in violation of 18 U.S.C. §
> 924(c)(1)(A)(iii) (Count 14)

(See Minaya Sentencing Tr., at 5:22-6:3; Castellano
Sentencing Tr., at 5:13-19.) Minaya was also sentenced to a
25-year consecutive sentence for an additional count of
discharge of a firearm in furtherance of attempted Hobbs Act
Robbery in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count
15) and a life sentence for murder while engaged in a crime
of violence in violation of 18 U.S.C. § 924(j)(1) (Count 16).
(See Minaya Sentencing Tr., at 5:22-6:3.)

On April 1, 2009, the Second Circuit affirmed the
convictions of Minaya and Castellano, but vacated the five-
year consecutive sentences imposed on their first common
Section 924(c) conviction (Count 10). United States v. Minaya
et al., 321 F. App'x 37, 42-43 (2d Cir. 2009) (summary order).

B. Post-Conviction Litigation

Subsequently, Castellano and Minaya, acting *pro se*, have
separately filed numerous habeas petitions, which were all
denied by this Court.[2] In 2015, the Supreme Court decided
United States v. Johnson, 576 U.S. 591 (2015). Johnson struck
as unconstitutionally vague the Armed Career Criminal Act's

---

[2] Minaya filed four habeas petitions prior to this one. (See Dkt. Nos.
270, 287, 311, 316 (denying Minaya's first four Section 2255 petitions).)
Castellano filed two habeas petitions prior to this one. (See Dkt. Nos.
277, 312 (denying Castellano's first two Section 2255 petitions).)

residual clause, codified in 18 U.S.C. § 924(e)(2)(B)(ii). Id. at 606. In the wake of Johnson, Petitioners each filed habeas petitions in May and September 2016. (See Dkt. Nos. 319 [Minaya], 318 [Castellano]), arguing that their Section 924(c) convictions should be vacated in light of Johnson. This Court initially denied the petitions on the merits (see Dkt. Nos. 320-21), and both petitioners sought authorization to file a successive petition in the Second Circuit. In 2019, while Petitioners' respective applications were pending before the Second Circuit, the Supreme Court decided United States v. Davis, 588 U.S. 445 (2019). Davis held that the residual clause in Section 924(c)(3)(B) is unconstitutionally vague. Id. at 470. Accordingly, the Second Circuit granted Petitioners' motion for leave to a file a successive Section 2255 motion. (See Dkt. Nos. 392, 395.)

On November 13, 2020, the Court stayed Petitioners' respective Section 2255 motions pending the Second Circuit's resolution of United States v. McCoy, 2d Cir. 17-3515, United States v. Collymore, 2d Cir. 19-596, or United States v. Morris, 2d Cir. 16-6 (See Dkt. Nos. 397-98.) The pending issue in all three of these cases was whether attempted Hobbs Act Robbery is a crime of violence under Section 924(c)'s elements

clause.[3] The Court subsequently extended the stay pending the Supreme Court's decision in United States v. Taylor, No. 120-1459, where the same issue was pending. (See Dkt. Nos. 405, 407.)

On June 21, 2022, the Supreme Court issued its decision in Taylor, holding that attempted Hobbs Act robbery is not a crime of violence under the elements clause, Section 924(c)(3)(A). See 596 U.S. 845 (2022). Accordingly, the Supreme Court remanded Second Circuit cases McCoy and Collymore for consideration in light of Taylor. Once again, this Court ordered that Castellano's and Minaya's successive § 2255 Petitions continue to be held in abeyance pending a decision in one of the aforementioned Second Circuit cases. The Court extended the stay again pending resolution of another Second Circuit case, United States v. Hussain (Barrett), No. 21-1379. (See Dkt. No. 431.) The pending issue in Barrett was whether completed Hobbs Act Robbery constitutes a crime of violence under Section 924(c).

In 2023, in light of United States v. Taylor, the Second Circuit vacated the counts of conviction under Section 923(c)(A) predicated on attempted Hobbs Act robbery in United

---

[3] The Second Circuit affirmed the convictions in both McCoy and Collymore. See United States v. McCoy, 995 F.3d 32 (2021); United States v. Collymore, 856 Fed. Appx. 345 (2021).

States v. Collymore, 61 F.4th 295 (2d Cir. 2023); United States v. McCoy, 58 F.4th 72 (2d Cir. 2023); and United States v. Morris, 61 F.4th 311 (2d Cir. 2023).[4] The Second Circuit further clarified that attempted Hobbs Act robbery cannot serve as a predicate for a conviction under Section 924(j)(1), because that offense requires the defendant to have violated Section 924(c). Collymore, 61 F.4th at 297.

Consistent with these decisions, the Government and Petitioners all initially agreed that Petitioners' Section 924(c) convictions predicated on attempted Hobbs Act robbery and Minaya's conviction under Section 924(j) should be vacated. (See Dkt. No. 448.)

Accordingly, Minaya and Castellano filed supplemental briefs in support of their Petitions, arguing that they are entitled to a resentencing hearing in light of the vacated convictions. (See Dkt. Nos. 451, 452.) On November 12, 2024, the Government filed an opposition reversing its initial position that Counts 10, 13, 15, and 16 should be vacated, contending that petitioners' motions are successive Section 2255 Petitions that rely on the statutory holding of United States v. Taylor — not a new rule of "constitutional law" —

---

[4] In 2024, the Second Circuit also held that completed Hobbs Act robbery constitutes a crime of violence under Section 924(c). United States v. Barrett, 102 F.4th 60, 81 (2d Cir. 2024).

and are accordingly impermissible successive habeas
petitions. (See Gov't Opp. at 1-2.) The Government also argues
that in the alternative, the Court should, in its discretion,
decline to review the collateral challenges under the
concurrent sentence doctrine. (See Gov't Opp. at 8.) Minaya
filed a reply but Castellano, after being given several
opportunities, did not file a reply. (See Dkt. Nos. 471-74.)

## II.  DISCUSSION

The parties dispute whether the Court should reach the
merits of Petitioners' claims. As already stated, the
Government asserts that Petitioners have failed to establish
that the Petitions rely on a new rule of constitutional law
made retroactive to cases on collateral review by the Supreme
Court. (See Gov't Opp. at 1-2.) Even if the Court were to
reach the merits, the Government maintains that it should not
review the claims under the concurrent sentence doctrine. The
Court first addresses whether the Petitions are procedurally
barred as impermissible successive habeas petitions.

A. AEDPA's Gatekeeping Requirements

Under the Antiterrorism and Effective Death Penalty Act
("AEDPA") of 1996, inmates who have already filed one habeas
petition face "stringent" limits on bringing a "second or
successive application for a writ of habeas corpus." Adams v.
United States, 155 F.3d 582, 583 (2d Cir. 1998). A federal

prisoner must clear several procedural hurdles before filing a second or successive petition. Savoca v. United States, 21 F.4th 225, 230 (2d Cir. 2021), vacated in part on other grounds, No. 20-1502, 2022 WL 17256392 (2d Cir. Nov. 29, 2022) (summary order).

At the outset, the petitioner must receive permission to file a second or successive petition from the appropriate court of appeals – here, the Second Circuit – in accordance with procedures "provided in section 2244." 28 U.S.C. § 2255(h); see also 28 U.S.C. § 2244(b)(3). To obtain permission, the petitioner must make a "prima facie showing" that his petition relies on: (1) "newly discovered evidence that, if proven", would be sufficient to establish factual innocence, or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." 28 U.S.C. § 2255(h).

In 2020, Petitioners received permission from the Second Circuit to file a successive petition challenging their Section 924(c) convictions predicated on attempted Hobbs Act robbery and the Second Circuit accordingly transferred the proceeding to this Court. (See Dkt. Nos. 392, 394.)

Once a petitioner's successive petition is properly before the district court, AEDPA shifts responsibility to the district court to "assess[], on the merits, each petition's

substantive compliance with AEDPA." Savoca, 21 F.4th at 232
(citing 28 U.S.C. § 2244(b)(4)). The district court must
engage in "a searching inquiry" to determine whether the
successive petition "in fact relies on a 'new rule of
constitutional law'". Savoca, 21 F.4th at 230 (citing 28
U.S.C. § 2244(b)(3)).

In the context of claims challenging convictions under
Section 924(c), as here, the Court must determine whether the
conviction was based on Section 924(c)(3)(A), the "elements
clause," or Section 924(c)(3)(B), the "residual clause."
Barnes v. United States, 16 Civ. 4521, 2024 WL 1309240, at
*3-4 (S.D.N.Y. Mar. 26, 2024). As stated above, the statute
has two definitions of "crime of violence." The elements
clause defines a "crime of violence" as a felony that "has an
element the use, attempted use, or threatened use of physical
force against the person or property of another." 18 U.S.C.
§ 924(c)(3)(A). The residual clause defines a "crime of
violence" as a felony "that by its nature, involves a
substantial risk that physical force against the person or
property of another may be used in the course of committing
the offense." 18 U.S.C. § 924(c)(3)(B).

The Supreme Court's holding in Davis, which voided the
residual clause as unconstitutionally vague, constitutes a
new rule of constitutional law that may sustain a successive

10

habeas petition. Thus, a petitioner may challenge his Section 924 conviction if he was convicted of a crime of violence as defined in the residual clause. Conversely, the Supreme Court's holding in Taylor, which held that attempted Hobbs Act robbery is not a "crime of violence" under the elements clause, constitutes a new rule of statutory law that cannot sustain a successive habeas petition. As such, no challenge is available if the petitioner was convicted of a crime of violence as defined in the elements clause. Petitioners may pursue their successive habeas Petitions only if their convictions were based on the residual clause.

Recently, the Second Circuit set forth a three-step process to determine whether the residual clause or the elements clause was the basis of the petitioner's conviction. See Savoca, 12 F.4th at 232. First, the Court must make a factual determination of "whether a particular sentencing record reflects a particular court's reliance on a particular ... clause." See id. at 232. If the record is unclear, the court may consider "background legal conditions" at the time of sentencing, such as binding circuit precedent. Savoca v. United States, No. 20-1502-pr, 2022 WL 17256392, at *3 (2d Cir. Nov. 29, 2022); United States v. Geozos, 870 F.3d 890, 896 (9th Cir. 2017). If the "background legal conditions" fail to clarify under which clause the petitioners were

sentenced to, the Court may reach "the question whether a habeas petition relies on a new rule of constitutional law when the record does not reveal the basis of the sentence." Savoca, 21 F.4th at 232.

    i.   Trial and Sentencing Record

Based on Petitioners' trial and sentencing records, it is unclear which "crime of violence" clause formed the basis of Petitioners' respective convictions under Section 924(c). At trial, Petitioners' request to charge did not specify how attempted Hobbs Act robbery and completed Hobbs Act robbery qualified as crimes of violence under Section 924(c)(3). (See Dkt. No. 147 at 54-56.) The final jury charge provided both definitions of "crime of violence" and then instructed the jury that attempted Hobbs Act robbery counts are "such crimes of violence" without specifying which clause the court was relying on. (See Dkt. No. 173 at 1317:22-23.) The sentencing proceedings for both petitioners were brief, and the sentencing court did not discuss the underlying counts. (See generally Castellano Sentencing Tr.; Minaya Sentencing Tr.) Accordingly, the record does not clearly show that Petitioners were convicted on Counts 10, 13, 15, and 16 pursuant to the elements clause.

    ii.   Background Legal Conditions

Given the ambiguous record, the Court now considers the "background legal conditions" at the time of sentencing to determine whether "applying a given clause would have been legal error at the time of sentencing." Savoca, 21 F.4th at 235. The Second Circuit caselaw at the time of Petitioners' convictions discussing Hobbs Act robbery in the context of Section 924(c) convictions does not offer any indication that the jury in this case more likely than not relied on the residual clause. See Parkes v. United States, No. 16 Cv. 4771 (LAK), 2023 WL 4865616, at *4 (S.D.N.Y. July 31, 2023) (finding background legal conditions "inconclusive" to determine whether a Section 924(c) conviction in 2005 likely rested on one or another clause); see also United States v. Lorenzana, 3-cr-1256, 2024 WL 5047224, at *8 (S.D.N.Y. Dec. 9, 2024) (same). Petitioners do not argue otherwise. Given the lack of clarity, the Court agrees with the Government that the legal conditions at the time of the Petitioners' convictions are inconclusive as to whether applying a given clause at the time of conviction would have constituted legal error.

iii. Whether the Petitions Rely on a New Rule of Constitutional Law

Given that the record and background legal conditions are inconclusive, the Court now considers whether Petitioners

13

have met their burden in proving that their habeas Petitions are based on a new rule of constitutional law. See Savoca, 2022 WL 17256392, at *3.

The Second Circuit has not issued any controlling authority regarding the standard of proof to show that a petitioner's conviction was based on the residual clause. The other circuit courts of appeal are split as to the standard of proof. Seven circuit courts have held that a petitioner must "establish[] that it is more likely than not that he was sentenced solely pursuant to [the] residual clause." Dimott v. United States, 881 F.3d 232, 243 (1st Cir. 2018)[5]. Three circuit courts have held that a petitioner need only show that the enhanced sentence "*may* have been predicated on application of the now-void residual clause." United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017 (emphasis added).[6] In the absence of controlling Second Circuit authority on this issue, the majority of district courts in the Second Circuit have adopted the "may have" standard. See

---

[5] See United States v. West, 68 F.4[th] 1335, 1338 (D.C. Cir. 2023); United States v. Clay, 921 F.3d 550, 559 (5th Cir. 2019); Walker v. United States, 900 F.3d 1012, 1015 (8th Cir. 2018); United States v. Washington, 890 F.3d 891, 896 (10th Cir. 2018); Potter v. United States, 887 F.3d 785, 788 (6th Cir. 2018); Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017

[6] See United States v. Peppers, 899 F.3d 211, 222 (3d Cir. 2018); United States v. Geozos, 870 F.3d 890, 896 (9th Cir. 2017).

Parkes, 2023 WL 4865616 at *5 n.47 (S.D.N.Y. July 31, 2023) (collecting cases).

The Government urges this Court to adopt the "more likely than not" standard yet provides no substantive arguments in support, offering only a string of case citations adopting that standard. (See Gov't Opp. at 7 n.4.) The Court agrees with the district courts in this Circuit that the "may have" standard better comports with AEDPA's gatekeeping requirements and constitutional principles. AEDPA provides that the petitioner must show that his or her habeas claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2244(b)(2)(A). This requirement is a threshold jurisdictional determination. At this juncture, requiring a petitioner to produce evidence that the sentencing court more likely than not relied on the residual clause would convert a jurisdictional gatekeeping analysis into a merits determination of the underlying petition. See Lorenzana, 2024 WL 5047224, at *9 (citing Peppers, 899 F.3d at 222).

Even more troubling is that the preponderance standard "penalize[s] a movant for a court's discretionary choice not to specify under which clause" of Section 924(c) "an offense qualified as" a crime of violence. See United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017). Given that there

was no indication at the time of Petitioners' convictions that the Supreme Court would strike either clause, it is unrealistic to expect courts at the time to specify which clause applied in jury instructions or at sentencing. Consequently, demanding a petitioner to prove by a preponderance of the evidence that his sentence relied on one clause or the other at the gatekeeping stage creates an overly high burden. In short, ambiguity as to which clause the convictions relied on should not be a procedural barrier to challenging potentially unconstitutional convictions. Cf. Griffin v. U.S., 502 U.S. 46, 53 (1991) ("[W]here a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground.")

Applying the "may have" standard, the Court finds that Petitioners' respective convictions may have been based on the residual clause. As explained above, the jury charge, trial transcript, and sentencing record all fail to establish that Petitioner's convictions rested on one clause or the other. Moreover, when defining Hobbs Act robbery in the jury charge, the trial court instructed that the "use of a threat or force or violence might be aimed at a third person, *or at causing economic rather than physical injury*. (See Dkt. No. 173 at 1311:10.) The court further instructed the jury that

16

"fear exists if at least one victim experiences anxiety, concern, or worry over expected personal harm or business loss, or over *financial or job security*." (Id. at 1311:14-16) (emphasis added). Accordingly, the mere threat of economic injury would be sufficient to convict Castellano and Minaya of attempted Hobbs Act robbery, but a "crime of violence" under the elements clause must include a threatened use of physical force against the person; economic injury would be insufficient. Lorenzana, 2024 WL 5047224, at *9. The fact that the sentencing court instructed the jury on economic injury, in addition to physical injury, calls into question whether in its conviction the jury relied on the elements clause. Based on these instructions and the ambiguity of the record, this Court concludes that Castellano and Minaya have shown that their Section 924(c) convictions "may have" relied on the residual clause that was invalidated by Davis. Therefore, their Petitions rely on a "new rule of constitutional law" and are not barred by AEDPA's gatekeeping requirements. 28 U.S.C. §§ 2255(h)(2), 2244(b)(2)(A).

   B. Concurrent Sentence Doctrine

   While Petitioners' motions challenging their convictions under Section 924(c) are not barred by AEDPA's gatekeeping requirements, a favorable decision on Petitioners' claims has no impact on Petitioners' respective life sentences for

racketeering (Count 1), especially given that Petitioners have not sought relief challenging their convictions in these proceedings. As such, the Court declines to review the merits of their challenges at this juncture under the concurrent sentence doctrine.

"The concurrent sentence doctrine is a 'rule of judicial convenience.'" Kassir v. United States, 3 F.4th 556, 561 (2d Cir. 2021) (citations omitted). The doctrine "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences" since "a ruling in the defendant's favor would not reduce the time he is required to serve or otherwise prejudice him in any way." Id. (citations and internal quotations omitted). The concurrent sentence doctrine applies to (1) collateral challenges to a conviction or sentence under § 2255, id. at 564, and (2) challenges to a sentence that runs consecutively to an unchallenged life sentence where a complete vacatur of the challenged sentence will "not reduce the time he is required to serve in prison." Al-'Owhali v. United States, 36 F.4th 461, 467 (2d Cir. 2022).

In applying the concurrent sentence doctrine, courts must inquire into whether "the defendant will suffer no adverse collateral consequences from the court's decision to leave his conviction and sentence unreviewed." Kassir, 3

F.4th at 561 (alteration omitted). In <u>United States v. Vargas</u>, the Second Circuit outlined five considerations: (1) "the unreviewed conviction's effect on the petitioner's eligibility for parole," (2) "the future application of recidivist statutes for a future offense by the petitioner," (3) the petitioner's credibility in future trials," (4) "the possibility of pardon," and (5) "societal stigma of a conviction." <u>Kassir</u>, 3 F.4th at 568.

First, there is "no meaningful possibility" that the unreviewed convictions will subject Petitioners to a "substantial risk of adverse collateral consequences." <u>Kassir</u>, 3 F.4th at 568. Both Petitioners are currently serving life sentences on their racketeering charge (Count 1) and consecutive 75 years on their discharge of a firearm in furtherance of charges of completed Hobbs Act Robbery (Counts 11, 12, 14). <u>See</u> <u>supra</u> I.A. These sentences were all affirmed on direct appeal and remain unchallenged here.[7] Moreover, the unreviewed convictions will have no effect on Petitioners' future parole eligibility because their life sentences apply without parole. <u>See</u> <u>United States v. Delgado</u>, 971 F.3d 144,

---

[7] For the sake of preservation, Castellano challenges his Section 924(c) convictions that are predicated on completed Hobbs Act robbery (Counts 11, 12, and 14.) (<u>See</u> Dkt. No. 457 at 5.) The Second Circuit has held that completed Hobbs Act robbery is a crime of violence under Section 924(c). <u>United States v. Barrett</u>, 102 F.4th 60, 81 (2d Cir. 2024). This Court is bound by Second Circuit precedent and denies Castellano's challenges to his convictions under Counts 11, 12, and 14.

159 (2d Cir. 2020) ("Since there is no parole in the federal system, [the] sentence is effectively the same as a life-without-parole sentence in state court systems."). Second, it is unlikely that Petitioners will be subject to a "recidivist statute for a future offense" because they are both in prison for life. See Al-'Owhali, 36 F.4th at 468. Third, the unreviewed convictions are unlikely to be used to impeach their character at a future trial or affect their chances at a potential pardon because they remain convicted on the racketeering charges in addition to murder while engaged in drug trafficking offenses (Count 17). Fourth, the social stigma of the Section 924(c) convictions is of little concern when petitioners' remaining convictions for racketeering, murder, and completed Hobbs Act robbery would still stand and carry their own social stigma. Accordingly, the Court will not review the merits of Petitioners' challenges to their Section 924(c) convictions.

**ORDER**

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motions of petitioners Alberto Castellano and Franklin Minaya ("Petitioners") to vacate their respective convictions pursuant to 28 U.S.C. § 2255 (Dkt. Nos. 451, 457) are **DENIED**.

The Clerk of Court is respectfully directed to mail this Order to Franklin Minaya, Register Number 52447-054, F.C.I. Lewisburg, Federal Correctional Institution, P.O. Box 1000, Lewisburg, PA 17837, and to Alberto Castellano, Register Number 12212-069, F.C.I. Lewisburg, Federal Correctional Institution, P.O. Box 1000, Lewisburg, PA 17837, and note service on the docket.

The Court will not issue a certificate of appealability as it finds that, given Petitioners' unchallenged convictions on the racketeering counts for which they were sentenced to life imprisonment, any appeal from this Order would not be taken in good faith within the meaning of 28 U.S.C. § 1915.

**SO ORDERED.**

Dated:      16 April 2025
            New York, New York

_____
          Victor Marrero
            U.S.D.J.